**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| IN RE: ) | Bankruptcy No. 07 B 01312 |
| ) | Chapter 7 |
| PELHAM ENTERPRISES, INC., ) | Judge John H. Squires |
| ) | |
| Debtor. ) | |

### MEMORANDUM OPINION

This matter comes before the Court on the motion of Gino's East Home, LLC (the "Creditor") for relief from the automatic stay under 11 U.S.C. § 362(d) and the objection thereto of Joseph A. Baldi, the Chapter 7 trustee (the "Trustee") of the bankruptcy estate of Pelham Enterprises, Inc. ("Pelham"). For the reasons set forth herein, the Court denies the motion. The Court finds that the personal property should be valued for purposes of this motion as part of a going concern restaurant operation and not at a liquidation or forced sale valuation; that the property has an aggregate value in the range of $300,000-$700,000 pursuant to 11 U.S.C. § 506(a)(1); and that there is some equity in the property over and above the amount of the Creditor's secured claims against that property. Based on the preponderance of the evidence, the Court finds and concludes that the Creditor's security interests in the personal property are adequately protected by an equity cushion of value over the amount claimed by the Creditor and the continued possessory interest in the property by an affiliate of the Creditor, which has the property and is using the property in its ongoing restaurant operations. Thus, the Court holds that relief under § 362(d)(1) or (d)(2) is inappropriate at this time. The automatic stay shall remain in full force and effect pending the resolution of the remaining disputes between the Trustee and the Creditor.

## I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(G).

## II. FACTS AND BACKGROUND

Pelham filed a voluntary Chapter 7 bankruptcy petition on January 25, 2007. Shortly thereafter, the Trustee was appointed as Chapter 7 trustee of Pelham's bankruptcy estate. The Debtor's president and secretary were Ernest and Beverly Ojeda.[1] (Creditor Ex. F, Statement of Financial Affairs Item 21.)

On January 14, 2005, Joey Buona's Pizzeria Grille – Chicago, L.L.C. ("Joey Buona's") sold a restaurant business to Pelham. The sale included certain personal property used in the operation of the restaurant and a lease of a restaurant premises at 160-164 East Superior Street, Chicago, Illinois (the "Premises"). The property includes grills, fryers, shelves, toasters, refrigerated counters, freezers, broilers, sinks, heat lamps, refrigerators, ovens, heated cabinets, mixers, steamers, ranges, faucets, dishwashers, cooking equipment (bowls, pots, pans, bins, utensils), plates, flatware, glassware, pitchers, chafers, trays, chairs, booths, benches, tables, paintings, artificial plants, window coverings, flower pots, and table umbrellas (the "Property"). (Trustee Ex. No. 7.) At the time of the sale, Joey Buona's and Pelham assigned a fair market value of $321,541 to the Property in their Form 8594 Asset Acquisition Statement as required under Section 1060 of the Internal Revenue Code. (Trustee Ex. No. 6.) Moreover, in January of

---

[1] The Ojedas filed a Chapter 7 bankruptcy petition on January 2, 2007.

-3-

2007, Pelham listed the Property on its Schedule B with a value of $321,541. (Trustee Ex. No. 1, Schedule B Item 29.) On its 2003 fiscal year financial statement, Joey Buona's booked values of $116,499 for small wares, $546,787 for machinery and equipment, and $563,791 for furniture and fixtures, all composite portions of the Property, which totaled over $1,200,000. (Trustee Ex. No. 9.)

At the time of the restaurant sale, Joey Buona's was leasing the Premises from Superior Street, L.L.C. and Superior 160, L.L.C. As part of the sale, Joey Buona's and Pelham entered into a long-term sublease ("Commercial Building Lease") for the Premises with Joey Buona's as the landlord and Pelham as the tenant. (Creditor Ex. II.) The Commercial Building Lease provided in part as follows:

> Section 18.2.   Tenant's Equipment.
>
> Subject to the terms and conditions of the License Agreement, *all of Tenant's trade fixtures and other personal property located upon the Premises shall be and remain the personal property of Tenant*, and the same are herein referred to as "Tenant's Trade Fixtures."
>
> Section 24.2.   Removal of Tenant's Trade Fixtures.
>
> *If Tenant does not remove Tenant's Trade Fixtures from the Premises prior to the end of the Term*, however ended, Landlord may, at its option, remove the same and deliver the same to any other place of business of Tenant or warehouse the same, and Tenant shall pay the cost of such removal (including the repair of any injury or damage to the Premises resulting from such removal), delivery and warehousing to Landlord on demand, or *Landlord may treat Tenant's Trade Fixtures as having been conveyed to Landlord with this Lease as a Bill of Sale, without further payment or credit by Landlord or Tenant.*

(*Id.* §§ 18.2 & 24.2.) (emphasis supplied)

-4-

Pelham defaulted on its lease payments and on January 18, 2006, Joey Buona's filed a forcible entry and detainer action for possession of the Premises against Pelham in the Circuit Court of Cook County, Illinois. (Trustee Ex. Nos. 3 ¶ 19 & 4 ¶ 19; Creditor Ex. F, Statement of Financial Affairs Item 4.) Pelham operated the restaurant at the Premises until it ceased operations in February of 2006. On February 22, 2006, Pelham and Joey Buona's entered into an agreement whereby Pelham agreed to surrender possession of the Premises to Joey Buona's. (Creditor Ex. P; Trustee Ex. No. 5.) The agreement further provided that it is without prejudice to the parties' respective claims, and that Joey Buona's would not transfer or otherwise affect Pelham's interest in the Property without Pelham's agreement. (*Id.*)

Shortly after Pelham surrendered possession of the Premises, it filed claims against Joey Buona's and its related parties for breach of the Illinois Franchise Disclosure Act, consumer fraud, and fraud in the state court. (Creditor Ex. F, Statement of Financial Affairs Item 4.) The state court litigation has been removed to this Court and is set for trial in 2008. (Adv. Pro. No. 07 A 00203, Docket No. 25.)

On June 29, 2006, the Creditor and Joey Buona's entered into an operating agreement with respect to a newly created Illinois limited liability company named BG East, L.L.C. ("BG East"). (Trustee Ex. No. 29.) The purpose of this agreement was to "rebrand, re-open and operate" the Premises as a Gino's East restaurant. (*Id.* at ¶ B.) Under the agreement, Joey Buona's was to "contribute" the Property to BG East. (*Id.* at ¶ 3.2(b).) Joey Buona's and the Creditor agreed that the Property had a value of $750,000 for "accounting and tax purposes." (*Id.*) In consideration of the contribution of the Property, BG East executed and delivered a note for $750,000 to Joey Buona's. (*Id.* at ¶ 3.3.) BG East is making payments to Joey Buona's under the note.

-5-

Pelham did not agree that Joey Buona's could contribute the Property to BG East; that BG East could use the Property in the conduct of its business; or that BG East could use the Property without paying compensation to Pelham. Since it opened the Gino's East restaurant for business in July of 2006, BG East has used most of the Property in the ongoing restaurant operations. The Creditor and Joey Buona's have authorized and consented to BG East's use of the Property. BG East is currently in possession of the Property.

No only did Pelham default in its Commercial Building Lease payments to Joey Buona's, it failed to pay other creditors. During the time it operated the restaurant, Pelham borrowed money or obtained credit from Sysco Food Services, Chicago, Inc. ("Sysco") and Rewards Network Establishment Services, Inc. ("Rewards Network"). Both obligations were secured by consensual security interests in all of Pelham's assets. (Creditor Exs. D, E, F, & I-N.) Both Sysco and Rewards Network filed lawsuits to collect the amounts owed to them by Pelham. (Creditor Exs. K-M.) Sysco obtained a judgment against Pelham in the sum of $46,423.28 on October 20, 2006. (Creditor Ex. M.) On October 31, 2006, Rewards Network assigned its claim to the Creditor. (Creditor Ex. D.) Thereafter, on February 20, 2007, Sysco assigned its claim to the Creditor. (Creditor Ex. E.) The Trustee contests a portion of the amount of the Rewards Network claim (Creditor Ex. L); the Trustee does not contest $43,879.86 of the $107,562.19 Rewards Network claim. (Creditor Ex. B, pp. 4-5.)

The Creditor, as assignee of the Sysco and Rewards Network claims, filed two proofs of claim in Pelham's bankruptcy case: Claim No. 18 in the amount of $46,423.28 and Claim No. 19 in the amount of $107,562.19. (Creditor Exs. E & D.) The Creditor claims a security interest in the Property to secure its claims. The Trustee has filed objections to the claims and alleges that

-6-

the Creditor converted the Property, among other claims, and seeks to disallow, avoid, and subordinate the Creditor's claims. (Trustee Ex. No. 3.) The Creditor filed an adversary proceeding against the Trustee to seek a determination of its rights and claims, and the Trustee has counterclaimed against the Creditor. (Adv. Pro. No. 07 A 00626.) That proceeding is set for pretrial conference in November of 2007.

On June 19, 2007, the Creditor filed the instant motion for relief from the stay in order to foreclose the Sysco and Rewards Network security interests by foreclosure sale under Article 9 of the Illinois Uniform Commercial Code. (Creditor Ex. A.) The Trustee opposes the motion. (Creditor Ex. B.) The Trustee contests the value of the Property and the amount of the Rewards Network claim. The Trustee does not dispute the Sysco claim. The Court held an evidentiary hearing on September 4, 2007. Thereafter, the matter was taken under advisement.

### III. DISCUSSION

The automatic stay under 11 U.S.C. § 362(a) was enacted "'to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or rehabilitation of the debtor.'" *In re Pleasant*, 320 B.R. 889, 893 (Bankr. N.D. Ill. 2004) (*quoting In re Rexene Prod. Co.*, 141 B.R. 574, 576 (Bankr. D. Del. 1992)). Section 362(d) of the Bankruptcy Code provides for relief from the automatic stay and states in pertinent part as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection

-7-

> (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay–
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> (A) the debtor does not have an equity in such property; and
> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).

Thus, § 362(d) provides two grounds under which relief from the automatic stay may be granted. *In re Jackson*, No. 98 B 15483, 1999 WL 703093, at *3 (Bankr. N.D. Ill. Sept. 9, 1999) (*citing In re 8th St. Vill. Ltd. P'ship*, 88 B.R. 853, 855 (Bankr. N.D. Ill.), *aff'd*, 94 B.R. 993 (N.D. Ill. 1988)). The first ground is cause, including lack of adequate protection. 11 U.S.C. § 362(d)(1). "Cause" has not been clearly defined and is determined on a case-by-case basis. *In re Fernstrom Storage & Van Co.*, 938 F.2d 731, 735 (7th Cir. 1991). The second ground is that the debtor does not have equity in the property and the property is unnecessary to an efficacious reorganization. 11 U.S.C. § 362(d)(2). The issues to be considered at a § 362 hearing are limited to whether the creditor has a colorable claim of interest in the property, adequacy of protection, equity, and necessity to an effective reorganization. *In re Vitreous Steel Prods. Co.*, 911 F.2d 1223, 1232 (7th Cir. 1990). Here, the issues the Court must consider are whether under § 362(d)(1) the Creditor lacks adequate protection for its claimed security interests in the Property

-8-

or has some other cause to lift the stay as to the Property, and whether there is any equity in the Property for purposes of § 362(d)(2).[2]

As the party requesting relief from the stay, the Creditor bears the burden on the issue of Pelham's equity in the Property. *See* 11 U.S.C. § 362(g)(1). *See also Fed. Nat'l Mortgage Ass'n v. Dacon Bolingbrook Assocs. Ltd. P'ship*, 153 B.R. 204, 208 (N.D. Ill. 1993); *In re Standfield*, 152 B.R. 528, 534 (Bankr. N.D. Ill. 1993). The Trustee, opposing such relief, has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g)(2). *See also Fed. Nat'l Mortgage*, 153 B.R. at 208; *Standfield*, 152 B.R. at 534. The decision to modify the automatic stay pursuant to § 362(d) is committed to the sound discretion of the bankruptcy court. *In re C & S Grain Co.*, 47 F.3d 233, 238 (7th Cir. 1995); *In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985); *Holtkamp v. Littlefield (In re Holtkamp)*, 669 F.2d 505, 507 (7th Cir. 1982).

The Creditor asserts a lien on the Property and seeks to have the automatic stay modified so that it can liquidate the collateral at an auction. As a creditor seeking to modify the stay, the Creditor has the burden of showing the existence, the validity, and the perfection of its secured claim against the Property. *See In re S. Ill. Railcar Co.*, 301 B.R. 305, 309 (Bankr. S.D. Ill. 2002). State law determines whether a valid security interest exists in property. *See Butner v. United States*, 440 U.S. 48, 54-57 (1979) (finding that the existence, nature, and extent of a security interest in property is governed by state law); *see also In re Martin Grinding & Mach. Works, Inc.*, 793 F.2d 592, 594 (7th Cir. 1986) (*citing Butner*). The parties do not dispute that Illinois law governs in this matter. Moreover, the parties do not dispute that the Creditor has liens against

---

[2] The Court need not determine whether the Property is necessary to an effective reorganization because Pelham filed a Chapter 7 case.

-9-

the Property by virtue of the Sysco and Rewards Network security interests. "Questions of the validity of liens are not generally at issue in a § 362 hearing, but only whether there is a *colorable* claim of a lien on property of the estate." *Vitreous Steel*, 911 F.2d at 1234.

This motion to modify the automatic stay is not the typical run-of-the-mill stay lift motion. An affiliate of the Creditor has been in possession of and has been using the Property in its business without payment to the bankruptcy estate or without the Trustee's consent for over one year. Regardless, the focus for purposes of this motion is a determination of whether the Creditor has established, by a preponderance of the evidence, a colorable claim to the security interests against the Property; whether cause is present to lift the stay as to the Property; and whether the bankruptcy estate has equity in the Property. *See Vitreous Steel*, 911 F.2d at 1232, 1234.

As a threshold issue, the Creditor asserts that the bankruptcy estate's interest in the Property has been terminated by § 24.2 of the Commercial Building Lease between Joey Buona's and Pelham. The Court rejects the Creditor's assertion that Pelham lost any interest it might have had in the Property when the Commercial Building Lease was terminated in February of 2006. Section 18.2 of the Commercial Building Lease provided that the Property "shall be and remain the personal property" of Pelham. (Creditor Ex. H, § 18.2.) If Pelham abandoned the Premises and did not remove the Property, Joey Buona's could elect to "treat" the Property as "having been conveyed" to it. (*Id.* § 24.2.) The state court forcible entry and detainer action that Joey Buona's filed against Pelham resulted in the agreed February 22, 2006 transfer of possession of the Premises and the Property to Joey Buona's without prejudice to the parties' respective claims, and Joey Buona's specifically agreed it would not transfer or otherwise affect Pelham's interest in the Property without its agreement. Thus, the Court concludes that, pursuant to this agreement,

-10-

Pelham's estate has an interest in the Property subject to the security interests assigned to and held by the Creditor.

Next, the Court finds that the Creditor has made the requisite showing that it has a colorable claim with respect to the Sysco judgment in the amount of $46,423.28. Regarding the Rewards Network claim, the Court finds that the Creditor has demonstrated that it also has a colorable claim. Although the Trustee disputes the full amount of the Rewards Network debt assigned to the Creditor, the issue of the allowable amount of the claim will not be decided at this summary proceeding. The Trustee has objected to that claim and the Court will address that objection at another time during the claims allowance phase. Thus, for purposes of this motion to lift the automatic stay, the Court finds that the Creditor has met its burden under *Vitreous Steel* to show its secured claims against the Property. Whether there is equity in the Property, however, is hotly contested by the parties.

The Court now turns to the critical issue in this matter--the proper value of the Property for purposes of the motion at bar. The parties have widely divergent positions on the value the Court should assign to the Property. The Creditor, on the one hand, argues that the Court should fix a liquidation value of $85,000 to the Property. (Creditor Exs. Q, R, & S.) This figure is based on the testimony of Judd Grafe ("Grafe"), president of Grafe Auction Company. Grafe specializes in the liquidation sale of property used in the food services industry. According to Grafe, the Property could be auctioned for $80,000-$90,000 with an average liquidation value of $85,000. (Creditor Ex. Q.) The Creditor argues that this liquidation value should be used and that the stay should be lifted because its secured claims exceed the liquidation value of the Property, and accordingly, there is no equity cushion in the Property for the bankruptcy estate to realize.

-11-

The Trustee, on the other hand, argues that the Property should be assigned a significantly higher value–$750,000–based on the note BG East executed just over a year ago and delivered to Joey Buona's and the value assigned to the Property by Joey Buona's and BG East pursuant to their agreement to operate the Premises as a Gino's East restaurant. The Trustee contends there is an ample equity cushion protecting the Creditor's secured claims and that the stay should remain in place because that equity cushion provides adequate protection to the Creditor while the remainder of the disputes between the parties proceed to determination on the merits.

Thus, the focus shifts to determine how to properly value the Property for purposes of the motion at bar. Section 506(a) of the Bankruptcy Code governs the allowance and valuation of secured claims. Pursuant to § 506(a)(1), the value of the Property "shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." 11 U.S.C. § 506(a)(1). Indeed, § 506(a)(1) requires a court to value property with respect to its "proposed disposition or use." *Assocs. Com. Corp. v. Rash*, 520 U.S. 953, 962 (1997) (stating that the "'proposed disposition or use' of the collateral is of paramount importance to the valuation question"). The Supreme Court in *Rash* addressed the issue of how a security interest in a motor vehicle should be valued under § 506(a) in the Chapter 13 context when a debtor exercises his option to "cram down" under 11 U.S.C. § 1325(a)(5)(B). "The Court rejected two approaches the courts of appeals had employed: a 'ruleless approach' that varied with each case, *id* at 964 n.5, and a 'split-the-difference approach' using 'the midpoint between foreclosure and replacement values,' *id.* at 964." *In re Gonzalez*, 295 B.R. 584, 589 (Bankr. N.D. Ill. 2003) (*quoting Rash*). Instead, the Supreme Court employed a "replacement value standard." *Rash*, 520

U.S. at 962-63. "Replacement value," according to the Court, means "the price a willing buyer in the debtor's trade, business, or situation would pay a willing seller to obtain property of like age and condition." *Id.* at 959 n.2. The Court in *Rash* left "to bankruptcy courts, as triers of fact, identification of the best way of ascertaining replacement value on the basis of the evidence presented." *Id.* at 965 n.6. According to the Court, "[w]hether replacement value is the equivalent of retail value, wholesale value, or some other value will depend on the type of debtor and the nature of the property." *Id.*

Some courts have held that the narrow holding in *Rash* does not control outside of the Chapter 13 cramdown context. *See, e.g., Smith v. Household Auto. Fin. Corp.*, 313 B.R. 267, 269 (N.D. Ill. 2004) (concluding that the *Rash* holding is limited to the Chapter 13 cramdown context and does not apply in the Chapter 7 redemption context); *In re Feliciano*, No. 04 C 3306, 2004 WL 2966966, at *2-3 (N.D. Ill. Nov. 22, 2004) (same); *In re Stark*, 311 B.R. 750, 754 n.5 (Bankr. N.D. Ill. 2004) (same). These decisions are not controlling and are inapposite because this matter does not involve a redemption motion under 11 U.S.C. § 722.

Selection of the appropriate valuation is problematic in this Chapter 7 case. Pelham is not an individual, and thus, the replacement value of the Property as of the date of the filing of the petition without deduction for costs of sale or marketing, which is now mandated in Chapter 7 and 13 cases for individual debtors in cases filed after October 17, 2005 pursuant to § 506(a)(2), is not necessarily required in this corporate case. Section 506(a)(2) further states that regarding "property acquired for personal, family, or household purposes," replacement value means "the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined." 11 U.S.C. § 506(a)(2). Even though § 506(a)(2)

-13-

is not mandatory in this commercial Chapter 7 case, it provides direction because it mandates use of the "replacement value" concept in consumer cases, as noted by the Supreme Court in *Rash*. Although neither § 506(a)(2) nor the narrow holding in *Rash* clearly controls, the concept of using replacement value as the standard here is more appropriate in keeping with the language of § 506(a)(1) in light of the undisputed trial testimony regarding the actual past, present, and future use of the Property in the ongoing restaurant operations.

The Creditor argues that it now seeks to liquidate the Property and apply the proceeds to satisfy at least a portion of its claims. Therefore, according to the Creditor, the Court should use the $85,000 liquidation value based on Graf's testimony. The Trustee contends, on the other hand, that the Court should use the much higher value of $750,000, which was ascribed to the Property by the Creditor and Joey Buona's incidental to the ongoing restaurant operations. Since BG East opened its Gino's East restaurant at the Premise in July 2006, BG East has used the Property.[3] The Creditor presented unrebutted evidence, via the testimony of Grafe, that the liquidation value of the Property, if it were sold at auction and removed by third party purchasers, is approximately $85,000. The Creditor, however, failed to present any evidence to show that it intends to sell the Property at auction. Carlo Buonavolanto ("Buonavolanto"), the principal of Joey Buona's, testified that currently most of the Property is being used in the ongoing operation of the Gino's East restaurant. Buonavolanto did not testify about any proposed sale of the Property at auction. Furthermore, Jeffrey Himmel of the Creditor testified that BG East has no plans to sell the Property at an auction and intends to continue to use the Property in the ongoing

---

[3] Mr. Buonavolanto testified that some of the Property was placed in storage, but he was not specific as to the exact items of Property in storage and not currently in use in the present restaurant operations.

restaurant operations. Hence, the Court attributes no weight to the Creditor's statements that it intends to sell the Property.

Accordingly, based on this testimony, the Court must value the Property for purposes of § 506(a)(1) with respect to its actual use in the current operation of the BG East restaurant as a going concern. Although the Creditor claims that it wants to auction the Property for sale, its affiliate is currently operating the restaurant as a going concern, and all of the testimony shows intent to continue to operate the restaurant using most of the Property. Thus, the Court concludes that a liquidation value is inappropriate here. *See In re Prince*, 85 F.3d 314, 320 (7th Cir. 1996) (noting that liquidation value is appropriate only in those cases where a business is dissolving and it would not be appropriate where a business was expected to continue as a going concern). Therefore, the Court declines to use Grafe's $85,000 liquidation value for the Property. Similarly, the acquisition cost of the Property, which was acquired several years ago by Joey Buona's, is not indicative of its present value in the current restaurant operations.

Instead, the more persuasive evidence is the value ascribed to the Property in connection with its current use in the ongoing restaurant operations. On January 14, 2005, Pelham and Joey Buona's valued the Property at $321,541 in the Form 8594 Asset Acquisition Statement. (Trustee Ex. No. 6.) This was filed to comply with federal tax law which requires a business to allocate values to purchased assets. 26 U.S.C. § 1060(a). Thereafter, on June 29, 2006, Joey Buona's and the Creditor valued the Property at $750,000 for "accounting and tax purposes." (Trustee Ex. No. 29, ¶ 3.2(b).) Accordingly, the Court finds that the Creditor's determination that the Property had a fair market value of $750,000 just over a year ago as part of its agreement with Joey Buona's is more probative of the Property's value in relation to its current proposed use than its liquidation

-15-

value. Moreover, valuation of the Property at $750,000 for tax and accounting purposes constitutes an admission of the fair market value of the Property. *See, e.g., Grill v. United States*, 303 F.2d 922, 926 (Ct. Cl. 1962) (noting that "[i]t is well settled that the valuation of an asset by a taxpayer in his tax return is an admission against interest, which in the absence of other impugning evidence, may be resorted to for determining market value."). Himmel testified that under applicable tax law and accounting principles, the Creditor is prohibited from valuing the Property at more than its fair market value. The evidence of the agreed value of the Property by the parties at the time of the respective acquisitions is the more persuasive evidence of value offered at trial. The January 2005 allocation between Pelham and Joey Buona's of over $321,000; the June 2006 allocated value of $750,000 between the Creditor and Joey Buona's; and Pelham's January 2007 value of $321,541 on its Schedule B are more probative of the range of the replacement value of the Property in an ongoing business in which the Property is used.

Nevertheless, the Court will not value the Property at the full $750,000 figure. That sum must be discounted for depreciation, wear and tear, and the passage of time of over a year. The range appears to be somewhere between $300,000-$700,000. It is undisputed that most of the Property has been used in the ongoing operation of the Gino's East restaurant since June of 2006. The critical inquiry here is the price a buyer like the Creditor would be willing to pay for collateral like the Property. *See Gonzalez*, 295 B.R. at 591. The court in *Gonzalez* relied on appraisal testimony to determine this issue. *Id.* The only appraisal testimony offered at trial focused on liquidation value, which the Court declines to use as previously discussed.

Lastly, the Creditor has the burden of showing that Pelham's estate lacks any equity in the Property. *See* 11 U.S.C. §§ 362(d)(2)(A) and 362(g)(1). The Creditor acquired the claims of

-16-

Sysco and Rewards Network. The parties do not dispute the Sysco judgment in the sum of $46,423.28. The Trustee does contest $43,879.86 of the Rewards Network claim. The Trustee objects to the allowance of the liquidated damages portion of the Rewards Network claim as a penalty. The Court need not determine in this summary proceeding the propriety of the liquidated damages clause. Even if the Court were to assign the full value of $107,562.19 to the Rewards Network claim, the Court finds there is a substantial equity cushion in the Property using the lower end of the range of $300,000 for value of the Property. This amount certainly exceeds the sum of the Sysco and Rewards Network claims against the Property ($46,423.28 + $107,562.19 = $153,985.47). Thus, the Creditor has failed to demonstrate that the Trustee, on behalf of Pelham's estate, lacks equity in the Property. Inasmuch as BG East, the Creditor affiliate, has had the use and possession of the Property at all times since the new restaurant operations commenced, the Creditor has adequate protection for purposes of § 362(d)(1). BG East will continue to have use of the Property pending further order of the Court and determination of the merits of the remaining litigation between the Creditor and the Trustee.

### IV. CONCLUSION

For the foregoing reasons, the Court denies the Creditor's motion for relief from the automatic stay.

This Opinion constitutes the Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate order shall be entered pursuant to Federal Rule of Bankruptcy Procedure 9021.

-17-

ENTERED:

DATE: 10/15/7

John H. Squires
United States Bankruptcy Judge

cc: See attached Service List

## SERVICE LIST

### Pelham Enterprises, Inc.
**Bankruptcy No. 07 B 01312**

Paul M. Bauch, Esq.
Kenneth A. Michaels, Jr., Esq.
Carolyn Y. Sales, Esq.
Bausch & Michaels, LLC
53 W. Jackson Blvd., Suite 1115
Chicago, IL 60604

Joseph A. Baldi, Esq.
Joseph Baldi & Associates
19 S. LaSalle Street, Suite 1500
Chicago, IL 60603

Daniel A. Zazove, Esq.
Jason D. Horowitz, Esq.
Perkins Coie LLP
131 S. Dearborn Street, Suite 1700
Chicago, IL 60603-5559

William T. Neary, United States Trustee
227 W. Monroe Street
Suite 3350
Chicago, IL 60606